May it please the court. The first question presented is this. Under what circumstances can the seller of a lawful product be convicted as an accomplice or a victim of a crime? When he knows a customer will use that product to commit a crime. The Supreme Court answered. You move your microphone up, please. I apologize, Your Honor. The Supreme Court answered that question in Rosemont. An accomplice must actively participate in the underlying criminal venture. The instructions here fail that test, allowing conviction based on intentional participation. These are not interchangeable terms. Why isn't your challenge, your Rosemont challenge, really a sufficiency challenge? And it feels like that is how the district court thought there might be something there had you made that argument. That when you're focusing on the quantum, the degree of participation, that really what you're saying here is your client's participation was too minor to support his criminal liability. It's a good and fair question, Your Honor. Insofar as every instructional claim has a steep toehold insufficiency claims, I agree. But what we lack here was the toehold. We needed the instructional hook to say to the jury. We lacked we weren't active. We were incidental facilitators of this crime, not active participants. So your position is that the the text of the jury instruction that was provided to the to the jury here prevented you from making that argument? Yes. It's the absence of an instruction that's required the jury to do what we asked. And that is distinguish at the threshold whether this is a confederate actively participating with the insiders or instead an incidental facilitator standing outside the venture but interacting with the principles is a gateway critical distinction that our instruction asked for. Do you know if our if our jury instruction is unique among the circuits and do other circuits use the active participation language and we don't? That's correct. I'm not aware of any pattern instruction that includes the active participation requirement. And anticipating your question, I don't know why I have a theory. And that's because it's often given in practice. In fact, in this very circuit courts in Rosemont itself instructed the jury that the defendant must be actively participating in the venture to be convicted as an accomplice. Because you see, these are different elements. Intentional participation, which is in the pattern instruction appropriately, is mens rea. Active participation is actus reus. And that distinction is vital to police this boundary that I just gestured at between an insider and an outsider. Layer that on top of the problem here is that we're selling a lot. Mr. Reader is selling a lawful product. What not to go back to the last case, you were listening. So I'm sure Ms. Miller will might say this again and but take the take the chemical company. I'm a salesman for a chemical company and I get paid a commission and I know and you come to me to buy the chemicals you need to make meth and I know you're making meth. But I don't really care because I'm going to make a commission off of it and you buy a lot. And so I'd facilitate either, you know, as an active Confederate or otherwise, you're making of meth by selling you the product. Is that a problem? Well, Ms. Miller, I'm sure, knows what I'm going to say. It is a problem. And we don't have to go to the chemical seller. How about the gun shop owner in Rosemont's footnote 8? Who probably the Supreme Court indicated is not liable as an accomplice. Well, the court just passed on that. I mean, explicitly didn't pass on that. Right. Well, it reserved. That's true. It reserved the question. But it did know two things. One, no prior Supreme Court case. And I can tell you, none since Rosemont have ever found an incidental facilitator criminally liable. One. And two, even in Rosemont itself, the court refused to entertain any factual scenario in which an incidental facilitator could be liable. So I agree, Judge Rossman. I agree. The holding of footnote 8 is not incidental facilitators are criminally exempt. But I think the implication is clear. What do we do with our cases like Bowen that say that participation of a relatively slight moment is sufficient? But what do we do with how do we should we be thinking about that sort of understanding of what the law requires and receiving your argument? Yes, that's I think we're getting to the nub of the question here. Active participation and minimal contribution to the crime operate on different axes. They answer different questions. Active participation is a threshold gateway determination. Are you in or out of this venture? Once you're in, says the law, we don't care how minimal or trivial even your contribution or how important your contribution is to the crime. And in fact, that's Rosemont. Defendant Rosemont's argument was I he admitted actively participating in one element of the crime and then asked, I think preposterously, that he had the government had to prove he actively participated in the crime. The court said that's not how aiding and abetting law works. You have to be an active participant in one part. And once you're in, then you can be a minimal contributor to the overall success of the crime. We wanted what Rosemont got, which is the instruction requiring active participation in the criminal venture. Does it matter that he had a personal that he had personal gain from selling the list to these folks? I mean, you know, it's it's it's relevant. He had very small gain. The government couldn't just determine how much gain it filed a pleading sort of foreswearing the ability to determine gain. But recall that the government's chief witness described the contribution of the scam mailers as minuscule to Mr. Rieger's overall responsibilities. You know, at the time of this trial or at the time, Mr. Lytle was Mr. Rieger was. Oh, go ahead. I'm sorry. I'm getting a glass of water. I'm listening. I know you are. I'm hanging on every word. Dry up there. Yeah. You feel like you've got some type of a heat stroke coming on? Well, you've got a couple thousand feet on us, your honor. So it's even drier where you are. The heat's only going up, but you're asking the questions. How sure how sure does an individual have to be that a crime will be committed? Is it a suspicion sufficient in your opinion? To be convicted. Let me just clarify, if I might, to be convicted of. Well, to be convicted as a co-conspirator. I mean, you've got a guy selling names and addresses and he's going to get a salary. He's going to get a commission if he develops business, which is risk takers, I think is what they called it. And if you have a suspicion, is that sufficient in your opinion to make you a co-conspirator? Unemphatically or emphatically, no, that is not sufficient. And while we're on the topic, I acknowledge that seems to be a pretty important issue to me. Yeah. And I think I was overly respectful of the jury's findings on that. Clearly, Judge Kelly and we did not raise sufficiency. We did not challenge the existence of a conspiracy. But I think if you this court decides there's insufficient evidence supporting the agreement required to sustain count one, you have the discretion to reach that, notwithstanding our failure to raise it. We also have a sentencing issue, unless there are questions on aiding and abetting. This question, this case also raises a sentencing question. It has to do with whether the district court misstated and misunderstood the legal standard controlling to be one point one, leading it to assess losses over ten million dollars without ever determining whether Mr. Rieger's criminal conduct was the but for cause of those losses. The first question I'm struggling with is to is to better understand what the district court actually ruled. That goes both to assessing whether there's error, but also to the government's allegation that there's there's not it wasn't preserved. And so really what I'm trying to understand is it seems to me that the argument you made in the district court challenging loss had to do with it was not you could not reasonably approximate actual loss in this case. The government chose not to pursue intended loss and you couldn't reasonably approximate actual loss. And you offered gain as an alternative. And I was trying to understand what really your challenge was, because it seems like the challenge you're making now to policing the but for causation requirement that inheres into be one point one is slightly different than the more factual challenge you made in the district court. I agree with virtually everything you said. Certainly, the conclusion we drew was gain is the appropriate. But in the middle, we've raised a factual challenge to the calculation of losses based on the merge purge process. We said that is an intervening event. And I'm quoting from one of our sentencing pleadings that breaks the causal chain between the asserted loss in the PSR and Mr. Rieger's criminal conduct. That's volume nine, volume six, page nine. You will see those words. Volume two, page 994. You will see us say to the government, you can't show that the names of these victims originated with epsilon. Therefore, you can't sustain the loss calculation. Our argument, and I realize we have a sort of Evans reunion here with a lawyer and the authoring judge, merge purge is to this case what the receiver's conduct and the deteriorating market conditions were in Evans. They're intervening events that break the causal chain. Because what happened is, you know, the mailer collects two to 50 lists and merges them into one enormous list. Epsilon, the government could never show that epsilon provided uniquely a name, which is to say the government could not show that but for Mr. Rieger's sale of the list, victim X would have been unvictimized. That's the causal chain that breaks because of merge purge. So how should we be thinking about 1B1.3? Was the district court, I guess my question is how should we be thinking about 1B1.3 in relation to finding loss under 2B1.1? We begin by crediting the government for correctly defining the scope of Mr. Rieger's jointly undertaking criminal activity. Because the government's loss figure premised on the exclusion of all names sold in the larger conspiracy, save the 26 million names Epsilon sold. We agree with that definition of relevant conduct. 1B1.3 captures Mr. Rieger's sales, those 26 million names. Now we say how many of those names can you show, Mr. Government, are the but-for cause of a victim's loss? The answer we said is none. You can't make that showing. We suggested then as an alternative, gain. If there's no questions, I'll save my time for rebuttal. Thank you, counsel. Do we need to revisit our aiding and abetting instruction to make sure it's in comports with Rosemond? I don't think that's necessary, Your Honor. And I think my response to that would be that we have to look at what the holding of Rosemond was, which was ultimately not about the degree of assistance that has to be provided for aiding and abetting. It was about where that mens rea has to coincide with the actus reas. And so I don't think that Rosemond really altered the law in any way that alters the validity of our jury instruction. It's possible that that dicta from Rosemond five years from now might appear in a Supreme Court opinion, laying out a new rule of law, but we don't anticipate what the Supreme Court does. I do think it's very careful to keep, we need to be careful to keep Rosemond in perspective, because it is fundamentally a decision about mental state. I also want to talk about the sort of hypotheticals again, and the concern that someone who might know they're selling this compound to people dealing meth, but not care, would end up being prosecuted. And I think regardless of what the correct answer to that question legally is, that's not anything that was at risk here when you look at the jury instructions, because the level of intent wasn't just knowingly, it was the specific intent to deceive people. And so the jury could not have convicted Mr. Rieger on the basis that he knew there was a crime going on and didn't care. The jury had to find and did find that Mr. Rieger intentionally participated, and that he intended ultimately the results that occurred here. So I guess, I mean, if we were talking about the last case, that might be more important, right? Because my next question was going to be, you know, like, what was the evidence of his actual intent? But it's a legal challenge here, right? Yes, Your Honor. So we could hypothesize about it, but it would go nowhere. Ultimately, since I think that wasn't the question presented to the court, I mean, I'm happy to talk about that evidence, but I do think that that is kind of besides the point at this stage. If there are no further questions on the aiding and abetting instruction, I did want to touch on the sentencing issue. Our position is that this has been pretty clearly waived. It was not brought up below. Well, let's assume it's not waived. Let's just get to the heart of the allegation of error. So I'm trying to understand. So take the following assumptions. It's preserved. The district court understood that but-for causation is part of 2B1.1. And what I'd like for you to address is how does the evidence here satisfy the standard under the guideline? So I think it satisfies the standard under the guideline in two ways. One is that we're not talking about the losses that Mr. Rieger was the but-for cause of, but the losses that really can be attributed to Epsilon because he was charged and convicted on this conspiracy. Well, it has to be the losses that are attributable to the offense, right? Yes. And what is the offense? Conspiring to commit mail fraud and wire fraud here or conspiring to commit a scheme to defraud. So that's an unhelpful answer. The scheme here is basically using Epsilon's tailored consumer data and combining that with these direct mailers to target people who are going to be especially vulnerable to them. And so the conduct that we're looking at is this partnership between Epsilon and the direct mailers and the people that receive those direct mailers as a result either of Epsilon's contribution of names or, you know, it's ultimately we know that the names either came from Epsilon or the direct mailers. That's how we sort of limited the calculations here. And so we don't have to know for certain which names were unique. And so is that so explain why you think, you know, the appellant makes the argument that the merge purge process is what broke the causal chain here, akin to how the receiver broke the causal chain in Evans. Why shouldn't we be looking at it the same way as the appellant is suggesting we should? I mean, I think that that I guess goes to the other point here, which is that, you know, in the strictest sense of the term. There's but for causation and there's factual causation. And when you're looking at multiple sufficient sources, it is possible to have factual causation like we have here, but not but for causation. I don't think that I'm not. You're saying there is not but for causation here. I am saying that the literal definition of but for but for we don't have an answer to that. I'm not saying there wasn't but for causation, but we would think that that would not be a good position for you to take. I mean, I there's but for causation when we're looking at it from the perspective of the conspiracy that I'm not conceding. If somehow the conspiracy goes away, then I would argue that. I mean, Evans talks about but for causation or factual causation. Right. To be one is obviously incorporating these traditional tort principles. And so the idea that just because we said in Evans that something has to be a but for or factual cause of the loss doesn't mean that this multiple sufficient sources rule probably isn't what that guideline was designed to incorporate. OK, help me write the opinion in your favor for a minute here. So if assuming preservation, so if the issue is preserved, why did the district court here not reversibly err in failing to account for but for causation and to be one point one? Because the conspiracy as a whole, all of those losses, all of those are still. But for the conspiracy is the but for cause of those losses, because we don't have to separate out what Epsilon contributed versus what the direct mailers contributed. They're all in this together. So, Mr. Rieger can be held liable for losses caused by names that that the direct mailers might have already had. So so that seems to me to implicate one be one point three, doesn't it? I mean, it's you know, we we we know that the offense of conspiracy is not going to be coextensive every time with the loss attributable for that offense. Right. So so we already go in knowing that it can't be one in the same. And one be one point three should help us discern the losses that are jointly undertaken or the losses for jointly undertaken activity that's reasonably foreseeable. And my concern here is that the district court didn't engage in any of that analysis. And I'm trying to understand who's to blame. Right. So if if the appellant is not to blame, it doesn't. We don't have a record here to make a what I think is a record based conclusion that loss has been proven up in the way we would normally expect to see it. I mean, I think you've anticipated my answer here, which you're not going to like, but this goes to preservation. Right. The reason we don't have that record is because this issue wasn't raised below. And the reason we don't have that record, even from the district court, the district court makes one off the cuff comment and counsel immediately says that's not the argument. I know, but I'm not I really I'm not persuaded by that theory of preservation or forfeiture waiver. And so I think what I am interested in and would like to get your response to is it does not seem to me that the district court engaged in the type of analysis we typically see under 2B1.1, which may require disaggregating some non-fraud caused losses. And is the reason for that in the government's position, because the defendant did not ask the court to do that? Is that your position? That is our position. Yes. I'm happy to answer any additional questions, but you want to talk about good faith. Nobody said anything about good faith. Certainly. You have five minutes. So I don't think the good faith instruction was necessary. I think that this court has been pretty clear that when the jury is instructed on intent properly, that good faith is not necessary. I also do think it's very problematic here that counsel wanted to argue that what he was doing wasn't against the law because he didn't know it was against the law. I think that was very much the theme of the argument throughout. And, you know, regardless of how we might feel about that, the law is clear that that's not the level of intent that's required. It was simply the intent to defraud. And that is compatible with the idea that you still think that your own conduct is within the bounds of the law. OK. Judge Kelly, you have anything? No. I just wanted to go back to the loss enhancement for a minute. Let's assume that we we think that to be one point one requires but for causation. Evans recognized that and in its holding and that the district court's ruling can be better read in the way the appellant does for sake of argument that the appellant says just flat out rejected. But for causation is the legal standard. If if that's how we read things in this case, do you agree that we would need to remand? At the podium, I can't see a way out of that. So, yes, your honor. Thank you. So let's get to causation. There's only one kind of factual causation. It's but for two. Our argument below leading up to the sentencing hearing was nothing but lack of factual causation. The district court kicked off the to be one discussion by rejecting flat out rejecting. But for so. So are you saying that that in this context. There's you can't really distinguish between the legal standard, a challenge to the legal standard and a challenge to whether the. And the question of whether your challenge was primarily factual. May I answer? Yeah. Our challenge was not primarily factual. It was entirely factual, prompting the district court to make a legal conclusion, which it earned. It rejected the but for standard that should have governed, analyzed, tested our factual. So what would happen if you prevail solely because the district court misunderstood the legal standard? And that's all we say. And it goes back. What happens? What is the correct? What does the correct analysis look like? I believe we'll eventually get to gain as an alternative. Well, no, no. What is the correct analysis look like in fleshing? I'm receiving what you're saying is, look, the district court just out of the gate rejected. But for causation, we didn't have an opportunity to develop further arguments on that front. So if you did, what would it look like? We begin with, as I said, crediting the government's reduction of the one B one three conduct to something less than the integrated conspiracy. We shrink it down to the 26 million names that Epsilon sold. And then probably at an evidentiary hearing, the government will have the burden to show that Mr. Rieger's conduct was the but for cause of the victim's losses, which is to say the government will have to show that Mr. Rieger, the but for Mr. Reed, that the absence of Mr. Rieger's present presence, victims would still have been victimized. That's a hard question. Hard way to say what I'm saying is that he will have to. The government will have to show that Mr. Rieger's caused the losses suffered by the victims in the absence of that. They cannot use to be one point one loss table. Did defense counsel below I presume you weren't defense counsel. Correct. OK. Did defense counsel below recognize that the government was I mean that the that the judge was rejecting the but for cause test? Yes. Which is why 20 pages later in the transcript. Defense counsel responds to Judge Moore's accusation that he's reprising the but for argument that Judge Moore rejected 20 minutes earlier, 15 minutes earlier. And Mr. Levy defense counsel pivots to assure the judge. No, I'm not challenging that. I have a different argument. OK, I guess I guess why I'm asking that is that I mean, generally, we would require you to your client. I mean, if they had a if they thought the court was applying the wrong standard to say, wait a minute, judge, I think you're applying the wrong standard here. And that's not at least readily apparent. Maybe maybe Judge Rossman seen something in here that I that I didn't see. But I don't want to belabor the point. You're over your time. I appreciate it. The case will be submitted and counselor excused.